ROAMIN BOWLER DORMAN, JR., TRUSTEE UNDER WILL OF R. B. DORMAN, DECEASED v. WAYAH VALLEY RANCH, INC.

No. 6930SC461

(Filed 19 November 1969)

**1. Easements § 6— action to establish easement by implication upon severance of title — sufficiency of evidence**

In an action seeking to require defendant to remove obstructions in a roadway extending across defendant's property from a highway to plaintiff's property and to have defendant permanently enjoined from placing further obstructions on the roadway, plaintiff's evidence is sufficient to support a finding of an easement by implication in the roadway upon severance of title, where (1) the lands now owned by plaintiff and defendant were part of a single title prior to 1937, in which year the separation of title occurred, (2) several witnesses, including the plaintiff, testified in detail as to the many and continuous uses of the roadway from

1919 to 1961, and (3) plaintiff needs the roadway to reach a summer cabin located on his land, but since the defendant's obstruction he has been unable to reach the cabin or keep it in repair.

2. **Easements § 3—  easement by implication upon severance of title**

The essentials necessary to the creation of an easement by implication upon severance of title are: (1) a separation of the title; (2) before the separation took place, the use which gives rise to the easement shall have been so long continued and so obvious or manifest as to show that it was meant to be permanent; and (3) the easement shall be necessary to the beneficial enjoyment of the land granted or retained.

APPEAL by defendant from *Martin, J., (Harry C.),* April 1969 Session, Superior Court of MACON County.

This is an action seeking to require defendant to remove obstructions in the roadway leading from a public road across lands of defendant to lands of plaintiff and asking that defendant be permanently enjoined and restrained from placing any further obstructions in the roadway and from interfering with the use of the roadway by plaintiff, his heirs, successors or assigns.

The complaint alleges, in substance, that the plaintiff owns a tract of land located some distance off the Wayah public road and defendant owns a tract of land lying between the plaintiff's land and the Wayah public road. Prior to 2 July 1937, Annie L. Slagle and John R. Slagle owned a large tract of land which included the tract now owned by plaintiff and the tract now owned by defendant. On 2 July 1937, the Slagles conveyed the tract now owned by plaintiff to Herman Menzel and wife. By conveyance and by will title thereto became vested in plaintiff. Annie L. Slagle acquired the interest of John R. Slagle in the remaining portion of the large tract under John R. Slagle's will. On 7 November 1945, she conveyed the tract now owned by defendant to T. H. McNish and E. M. McNish and on 24 November 1953, they conveyed it to defendant. For many years prior to 2 July 1937, a dwelling house was located on the tract now owned by plaintiff and ingress and egress to the house and the land now owned by plaintiff was by a road leading from said property over the lands now owned by defendant to the Wayah public road. This road was used for a great many years prior to 2 July 1937 by the occupants of the house and was the only means of access to the property. The subsequent owners of the property, including plaintiff continued to use the road as the only access to the property. Plaintiff's immediate predecessor in title constructed a summer home on the land, using the road to haul in all building materials used therein and kept the road maintained. In 1961 defendant obstructed the road and has refused to allow plaintiff to use it. Al-

though the house needs repair plaintiff cannot move materials therefor onto the property and cannot use the property as a home in which to live because of the obstructions on the road. Plaintiff's land does not abut any public road. The road leading from Wayah public road over defendant's land is the only way plaintiff can gain access to his property and the road is necessary to the beneficial enjoyment of plaintiff's land.

Defendant answered denying the necessary use of the road by plaintiff, averring that a road constructed by the Mead Corporation in an entirely different location is available to plaintiff, denying the existence of a right-of-way, averring that it purchased its land with no notice of any easement for a road to plaintiff's land and further averring abandonment of the road or easement if any existed.

At the close of plaintiff's evidence defendant demurred to the evidence and moved for judgment as of involuntary nonsuit. The motion was denied and defendant excepted. Defendant introduced certain deeds into evidence, rested, and renewed its motion for nonsuit, which was denied and defendant excepted. The jury answered the issue submitted in favor of plaintiff and defendant appealed assigning error.

*Jones, Jones and Key, by R. S. Jones, Jr., and J. H. Stockton, for plaintiff appellee.*

*Monteith, Coward & Coward, by Thomas W. Jones, for defendant appellant.*

MORRIS, J.

**[1]** The only assignment of error brought forward by defendant is the failure of the court to allow its motion for nonsuit at the close of all the evidence.

The record contains a stipulation that competent evidence was introduced by plaintiff upon which the jury could find the following facts:

"(1) That the plaintiff is a citizen and resident of Fulton County, Georgia, and that the defendant is a North Carolina Corporation with its principal place of business in Macon County, North Carolina.

(2) That prior to July 2, 1937 Annie L. Slagle (single) and John R. Slagle (single) were the owners of a tract of land in Macon County, North Carolina, and that said tract of land in-

cluded the lands now owned by the plaintiff and the land now owned by the defendant.

(3)    That prior to July 2, 1937, and on that date, and thereafter that portion of the Slagle lands now owned by the defendant adjoined and abutted upon a public road known as the Wayah Public Road, and that portion of the Slagle lands now owned by the plaintiff did not and does not join or abut upon any public road.

(4)    That on July 2, 1937 Annie L. Slagle and John R. Slagle conveyed by Warranty Deed that portion of their tract of land described in Paragraph 3 of the Amended Complaint to Herman Menzel and wife, Willa H. Menzel, the habendum clause in said deed reading as follows: 'To have and to hold the aforesaid tract or parcel of land and all privileges and appurtenances thereto belonging to the said Herman Menzel and wife, Willa H. Menzel, and their heirs and assigns, to their only use and behoof forever', and that said warranty deed was duly recorded in the Office of the Register of Deeds of Macon County and appears of record in said Office.

(5)    That on January 22, 1940 Herman Menzel and wife, Willa H. Menzel conveyed by warranty deed with the above quoted habendum clause the lands now owned by the plaintiff and described in Paragraph 3 of the Amended Complaint to R. B. Dorman and that said deed was duly recorded in the Office of the Register of Deeds of Macon County and appears of record in said Office.

(6)    That R. B. Dorman thereafter died leaving a will dated July 19, 1954, that said will was allowed for probate in Macon County, North Carolina, on August 10, 1955 following the death of R. B. Dorman, and that the plaintiff in this action became the owner in fee of his lands described in Paragraph 3 of the Amended Complaint under and by virtue of said will.

(7)    That upon the death of John R. Slagle sometime prior to February 18, 1938, Annie L. Slagle became the owner in fee of the remainder of the Slagle large tract of land not theretofore conveyed to Herman Menzel and wife, Willa H. Menzel.

(8)    That on November 7, 1945 Annie L. Slagle conveyed by Warranty Deed to T. H. McNish and E. M. McNish the remainder of the Slagle large tract of land, the habendum clause in said deed reading as follows: 'To have and to hold the aforesaid tract or parcel of land and all privileges and appurten-

ances thereto belonging to the said T. H. McNish and E. M.. McNish, and their heirs and assigns, to their only use and behoof forever'; that said deed contained no reference to any road or road right-of-way or easement, and that said deed was duly recorded in the Office of the Register of Deeds of Macon County, North Carolina and appears of record in said Office.

(9)   That on November 24, 1953 T. H. McNish and wife, E. M. McNish and wife conveyed their lands by warranty deed to the defendant with the same habendum clause quoted in paragraph next above, and that said deed contained no reference to any road or road right-of-way or easement, and that said warranty deed was duly recorded in the Office of the Register of Deeds of Macon County and appears of record in said office."

We note that plaintiff alleges in his complaint that the metes and bounds description of the land owned by plaintiff contains the following call: "thence N 8 degrees 30 E crossing small island in Locust Tree Creek at 3.00 chains, 4.00 chains to corner 7, a planted stone with wits. on north side of road;" and this is not denied by defendant.

"It is settled law in this jurisdiction that where an owner of a tract of land conveys a portion thereof, the grantee takes the portion conveyed with the benefits or burdens of all those apparent and visible easements which appear at the time of the conveyance to belong to it, as between it and the property which the grantor retains. *Bradley v. Bradley,* 245 N.C. 483, 96 S.E. 2d 417; *Barwick v. Rouse,* 245 N.C. 391, 95 S.E. 2d 869; *Spruill v. Nixon,* 238 N.C. 523, 78 S.E. 2d 323; *Carver v. Leatherwood,* 230 N.C. 96, 52 S.E. 2d 1; *Packard v. Smart,* 224 N.C. 480, 31 S.E. 2d 517; *Carmon v. Dick,* 170 N.C. 305, 87 S.E. 224. Stated another way: '. . . (W)here, during the unity of title, an apparently permanent and obvious servitude is imposed on one part of an estate in favor of another part, which servitude, at the time of the severance, is in use and is reasonably necessary to the fair enjoyment of the other part of the estate, then upon a severance of the ownership, a grant of the right to continue such use arises by implication of law. . . . The underlying basis of the rule is that unless the contrary is provided, all privileges and appurtenances as are obviously incident and necessary to the fair enjoyment of the property granted substantially in the condition in which it is enjoyed by the grantor are included in the grant.' *Barwick v. Rouse, supra,* quoting from 17 Am. Jur., 945, Easements Implied, section 33." *Potter v. Potter,* 251 N.C. 760, 112 S.E. 2d 569 (1960).

**[2]** The three essentials necessary to the creation of an easement by implication upon severance of title were succinctly stated by Winborne, C.J., in *Barwick v. Rouse,* 245 N.C. 391, 95 S.E. 2d 869 (1957), as follows:

"(1) A separation of the title; (2) before the separation took place, the use which gives rise to the easement shall have been so long continued and so obvious or manifest as to show that it was meant to be permanent; and (3) the easement shall be necessary to the beneficial enjoyment of the land granted or retained. 17 Am. Jur. 948; Easements, Section 34. *Carmon v. Dick,* 170 N.C. 305, 87 S.E. 224; *Ferrell v. Trust Co., supra* [221 N.C. 432, 20 S.E. 2d 329]; *Spruill v. Nixon, supra* [238 N.C. 523, 78 S.E. 2d 323]."

**[1]** Appellant has stipulated that from the evidence the jury could find that the first element existed but contends that plaintiff's evidence is insufficient to go to the jury as to the second and third element.

In addition to the stipulated evidence, plaintiff's evidence tended to show: Richard H. Slagle testified that he was 59 years of age, a registered surveyor, a nephew of John R. Slagle and Annie L. Slagle and was familiar with the large tract of land owned by them prior to 2 July 1937. He surveyed the tract sold by them to Menzel in 1937. At that time the road in question was a good "passable" road which could be driven over by car. It was almost 10 feet wide, with a few places where one might pass. The old road was there when he first knew the property and "is older than I am." He again surveyed the property in 1954 for Mr. R. B. Dorman and still later surveyed the road as it existed in 1937. There was evidence of gravel on the road almost all the way through onto the plaintiff's property. There was an old house on plaintiff's property prior to 1937. He didn't remember its being occupied, but he had stopped there to get out of the rain. A portion of the old road is now covered by the lake on defendant's property. The old road was the only access road in 1937 to the property now owned by plaintiff and it was the road he used. Sometime in 1949 or 1950 the Mead Corporation built a separate road used by the U.S. Forest Service which ran from the Wayah public road around a circle to the right of and through the lands of a Dr. Mann, through another portion of defendant's lands and the lands of the U.S. Forest Service to a point at plaintiff's property line. This is an entirely different road from the old road there in 1937 and there was a fence across it. This witness also identified the road in question on a map made by him

which was introduced into evidence. Cecil Green testified that he had lived in Macon County 52 years, was familiar with plaintiff's property and had used the road to plaintiff's property as early as 1919 when he walked there and rode horses. He had bought tan bark and telephone poles from the Slagles and hauled them out over the road about 1927. The road was in about the same location as in 1919 with the exception of a few changes he and one John Wallace had made with the knowledge of the Slagles. He had been back on plaintiff's property in 1934 or 1935 and since 1934 and the road was still in its location and was a very good road.

John Wallace testified that he and the Greens had changed the access road in 1927 when they worked the poles and tan bark; that he was familiar with plaintiff's property; that they had used the road to haul logs and timber since there was no other access road; that there was then a family named Tillson living on the property and they used the road, going in and out in a car or truck. Ernest Wallace testified that he helped relocate the road with Miss Slagle's permission; that he worked for the Forestry Service from 1940 to 1960 and during that time went through plaintiff's property to read rain gauges on the mountain. The road used at that time was in the same location as in 1927; that he never used the Forest Service Road. Wesley Williamson testified that he went on the property now owned by plaintiff in 1932 or 1933 to look at some hogs; that he worked for plaintiff's father in 1951 or 1952 and regularly used the road for access. In 1955 or 1956, he did some work for defendant's predecessor in title. The road was there then and Mr. Dorman was using it for access to his property.

Plaintiff testified that his father bought the property in 1940; that there was a foundation of an old house and some outbuildings which he and his father improved and in which they lived while working on the property; that he used the old road frequently from 1940 to 1962 when it was obstructed by defendant. He and his father improved the old road from time to time, constructed a cabin on the property which he, his family and friends used until the road was obstructed and since then has been unable to get to the property to keep it and the improvements repaired; that he had never attempted to use the Mead Road; that he had no right-of-way over it; that it had not been maintained and was in a bad state of repair; that it crossed the lands of Mann and the defendant before it reaches plaintiff's land.

The evidence is sufficient for submission to the jury as to the second element; i.e., whether before the separation of title took place,

the use giving rise to the easement was so long continued and obvious or manifest to show that it was meant to be permanent.

Even so, defendant contends, plaintiff's evidence at best shows only that the right to use the road would only serve plaintiff's convenience and is not a necessity since there is evidence that another road exists furnishing ingress and egress over other adjoining lands.

Our Court has noted that although the greater weight of authority seems to hold that no easement will be created by implication unless it be one of strict necessity, this jurisdiction interprets that to mean only that the easement should be reasonably necessary to the just enjoyment of the properties affected thereby. *Potter v. Potter, supra.*

> "To establish the right to use a road as appurtenant to the property granted, it is not necessary to show absolute necessity. It is sufficient to show such physical conditions and such use as would reasonably lead one to believe that grantor intended grantee should have the right to continue to use the road in the same manner and to the same extent which his grantor had used it, because such use was reasonably necessary to the 'fair', *Potter v. Potter, supra,* 'full', *Bradley v. Bradley, supra,* 'convenient and comfortable', *Meroney v. Cherokee Lodge,* 182 N.C. 739, 110 S.E. 89, *Carmon v. Dick, supra,* enjoyment of his property." *Smith v. Moore,* 254 N.C. 186, 118 S.E. 2d 436 (1961).

We think the evidence of plaintiff sufficient for submission to the jury as respects the third element; i.e., that the easement shall be necessary to the beneficial enjoyment of the land granted or retained.

Affirmed.

MALLARD, C.J., and HEDRICK, J., concur.